Paul H. Burleigh, Bar No. 112512
pburleigh@klinedinstlaw.com
KLINEDINST PC
777 S. Figueroa St., Suite 2800
Los Angeles, California 90017
(213) 406-1100/FAX (213) 406-1101

Attorneys for Plaintiff
Liberty Mutual Insurance Company

AND

Michael D. Prough, Esq. (SBN: 168741)
michael.prough@mhdplaw.com
MORISON & PROUGH LLP
2540 Camino Diablo, Suite 100
Walnut Creek, CA  94597
Telephone: 925-937-9990
Facsimile: 925-937-3272

Attorneys for Plaintiff
RLI Insurance Company

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| RLI INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY,<br><br>        Plaintiffs,<br><br>    v.<br><br>CERADYNE, INC.; DOES 1-30, INCLUSIVE,<br><br>        Defendants. | Case No.  8:20-cv-1997<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiffs RLI Insurance Company ("RLI") and Liberty Mutual Insurance Company ("Liberty") bring this Complaint for Declaratory Judgment against defendant Ceradyne, Inc. ("Ceradyne" or "Defendant"), upon knowledge, information and/or belief, and allege as follows:

    1.    Plaintiffs bring this action for a declaration concerning their rights and

obligations under the excess insurance policies they issued to Ceradyne with respect to the settlement of a consolidated class action lawsuit brought by former Ceradyne shareholders, captioned *In re Ceradyne, Inc. Shareholder Litigation*, Case No. 30-2012-00604001-CU-BT-CXC (Orange County Superior Court) (the "Underlying Litigation"). The shareholders sued Ceradyne and its directors in connection with a merger whereby 3M Company through a subsidiary, acquired Ceradyne. The shareholders alleged that the per-share amount that 3M Company paid in consideration for the merger was inadequate. Ceradyne has requested coverage for a settlement of the Underlying Litigation from RLI and Liberty.

2. The primary policy to which the policies issued by RLI and Liberty generally follow form provides coverage, subject to its other terms, conditions and limitations, only for "Loss."[1] The definition of Loss in the Primary Policy states in part that "[i]n the event of a Claim alleging that the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all the ownership interest in or assets of an entity is inadequate, Loss with respect to such Claim shall not include any amount of any judgment or settlement representing the amount by which such price or consideration is effectively increased . . . ."

3. As a settlement of litigation by shareholders alleging an inadequate merger price, the settlement of the Underlying Litigation falls squarely within this provision. Therefore, the Defendants' policies do not provide coverage for the settlement.

4. Accordingly, Plaintiffs seek a judgment declaring that they have no obligation to provide coverage in connection with the settlement of the Underlying Litigation.

---

[1] Unless otherwise noted, terms appearing in bold font are defined in the referenced policy.

## PARTIES

5. Plaintiff RLI is an Illinois corporation with its principal place of business in Illinois.

6. Plaintiff Liberty is a corporation organized and existing under the laws of Massachusetts, and Liberty's principal place of business is in Boston, Massachusetts.

7. Upon information and belief, Defendant Ceradyne is a corporation organized and existing under the laws of Delaware, with its principal place of business in California.

## JURISDICTION AND VENUE

8. This action is brought pursuant to 28 U.S.C. §§ 1332, 2201 and 2202.

9. There is complete diversity between Plaintiffs, on the one hand, and the Defendants, on the other, and the amount in controversy as to each defendant exceeds the sum or value of $75,000, exclusive of interest and costs. As set forth below, there is an actual controversy between the parties.

10. Pursuant to 28 U.S.C. § 1391, venue is proper in this District because the events giving rise to this dispute occurred within this District.

## FACTUAL ALLEGATIONS

**THE POLICIES**

11. National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") issued Executive Edge Broad Form Management Liability Insurance Policy No. 003-477-0040 to Ceradyne for the initial period of July 31, 2012 to July 31, 2013. (the "Primary Policy") [Primary Policy, Declarations, Items 1 and 2.] A true and correct copy of the Primary Policy (without application) is attached as Exhibit A to this Complaint. The Primary Policy has a Limit of Liability of $5 million and a $500,000 Securities Retention.

12. RLI issued policy no. EPG0011375 (the "RLI Policy") to Ceradyne. A true and correct copy of the RLI Policy is attached as Exhibit B. The RLI Policy is

KLINEDINST PC
777 S. FIGUEROA ST., SUITE 2800
LOS ANGELES, CALIFORNIA 90017

subject to a limit of liability of $5 million, excess of the $5 million limit of liability of the Primary Policy and deductible/retention.

13. Liberty issued policy no. DO3S-575397-007 (the "Liberty Policy") to Ceradyne. The Liberty Policy is subject to a $5 million limit of liability that is excess of the $5 million limit of liability of the RLI Policy and the $5 million limit of liability of the Primary Policy and deductible/retention. A true and correct copy of the Liberty Policy is attached as Exhibit C.

14. The RLI Policy and the Liberty Policy are hereinafter referred to as the "Excess Policies."  The Excess Policies, together with the Primary Policy, are referred to as the "Policies."

15. Primary Policy Clause 1.A provides coverage, subject to the Policies' other terms, limitations, and exclusions, for "the Loss of any Insured Person that no Organization has indemnified or paid, and that arises from any . . . Claim . . . made against such Insured Person . . . for any Wrongful Act of such Insured Person . . . ." [Primary Policy, Section 1.A.]

16. Primary Policy Clause 1.B provides coverage, subject to the Policies' other terms, limitations, and exclusions, for "the Loss of an Organization that arises from any . . . Claim . . . made against any Insured Person  . . . for any Wrongful Act of such Insured Person . . . but only to the extent that such Organization has indemnified such Loss of, or paid such Loss on behalf of, the Insured Person." [Primary Policy, Section 1.B.]

17. Ceradyne is an "Organization," and the defendants in the Underlying Litigation – directors and/or officers of Ceradyne – are "Insured Persons," as those terms are defined under the Primary Policy.  [Primary Policy, Section 13.]

18. The Primary Policy defines "Claim" to include, among other things, "a civil . . . proceeding for monetary, non-monetary or injunctive relief which is commenced by: (i) service of a complaint or similar pleading. . . ." [*Id*.]  The term "Claim" is defined to include a Securities Claim.  [*Id*.]

19. The Primary Policy defines "Wrongful Act" to include, among other things, "any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, [or] omission . . . with respect to any Executive of an Organization, by such Executive in his or her capacity as such or any matter claimed against such Executive solely by reason of his or her status as such . . . ." [*Id.*]

20. The Primary Policy defines "Loss," subject to certain specified exceptions, as "damages, settlements, judgments (including pre/post-judgment interest on a covered judgment), Defense Costs, Crisis Loss, Derivative Investigation Costs, Liberty Protection Costs and Pre-Claim Inquiry Costs . . . ." [*Id.*]

21. The definition of "Loss" further states that:

> [i]n the event of a Claim alleging that the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all the ownership interest in or assets of an entity is inadequate, Loss with respect to such Claim shall not include any amount of any judgment or settlement representing the amount by which such price or consideration is effectively increased; provided, however, that this paragraph shall not apply to Defense Costs or to any Non-Indemnifiable Loss in connection therewith.

[*Id.* (the "Loss Exception").]

22. "Non-Indemnifiable Loss" is defined in the Primary Policy as "Loss for which an Organization has neither indemnified nor is permitted or required to indemnify an Insured Person pursuant to law or contract or the charter, bylaws, operating agreement or similar documents of an Organization." [Primary Policy, Section 13.]

**THE UNDERLYING LITIGATION**

23. The Underlying Litigation arises from the merger between Ceradyne and 3M Company whereby a wholly-owned subsidiary of 3M Company would

5
COMPLAINT FOR DECLARATORY RELIEF

acquire Ceradyne for $35.00 per share in cash through a tender offer and short-form merger (the "Merger").

24. Specifically, on October 1, 2012, Ceradyne and 3M Company jointly announced that they had entered into a definitive agreement and plan of merger (the "Merger Agreement") pursuant to which 3M Company, through its wholly-owned subsidiary Cyborg Acquisition Corporation (together with 3M Company, "3M"), would acquire Ceradyne for $35.00 per share in cash through a tender offer and short-form merger.

25. The Merger was consummated on November 29, 2012.

26. Ceradyne is a wholly-owned subsidiary of 3M Company.

27. Following the Merger, stockholders of Ceradyne, who sold their shares pursuant to the Merger, filed suit claiming that they were paid inadequate consideration for their shares.

28. The operative Fourth Consolidated Amended Complaint (the "Consolidated Complaint") was filed in the Underlying Litigation on or around August 10, 2015.

29. The operative complaint-in-intervention in the Underlying Litigation (the "Intervernor Complaint") was filed on September 13, 2016.

30. The Consolidated Complaint and the Intervenor Complaint are referred to collectively as the "Underlying Complaints."

31. The Underlying Complaints name Ceradyne and certain of its directors as defendants and allege that the directors, Joel P. Mozkowitz, Richard A. Alliegro, Frank Edelstein, Richard A. Kersoton, Siegreid Müssing and Milton L. Lohr (the "Individual Defendants"), breached their fiduciary duties in connection with the Merger.

32. The Underlying Complaints purport to be brought on behalf of a class of all stockholders of Ceradyne (except Ceradyne and the Individual Defendants, and any person, firm, trust, corporation or other entity related to or affiliated with

6
COMPLAINT FOR DECLARATORY RELIEF

Ceradyne or the Individual Defendants) who were harmed as a result of the breaches of fiduciary duty and other misconduct complained of in the Underlying Complaints.

33. The Underlying Complaints allege that, to assist in evaluating a possible sale, Ceradyne directors approved the retention of Citigroup to act as the Company's financial advisor. As part of its engagement, Citigroup performed customary financial analyses, including a discounted cash flow ("DCF") analysis, that were intended to assess the value of the Company.

34. The Underlying Complaints allege that, to conduct a DCF analysis, Citigroup utilized Ceradyne's standing financial projections (the "Base Case"). The Company's management team prepared the Base Case using their best judgment to project Ceradyne's financial results over the following five years. Citigroup's DCF analysis showed a value for Ceradyne's common stock between *$41.75 and $60.75* per share.

35. The Underlying Complaints allege that, "[i]ntentionally disregarding that Ceradyne was worth more to its stockholders as a standalone business, Ceradyne directors later approved a sale to 3M for just $35.00 per share."

36. The Underlying Complaints allege that Ceradyne "was worth far more than an offer in the mid-30's per share."

37. The Underlying Complaints each contain sections with the heading "The Inadequate Consideration."

38. The Underlying Complaints allege that "[t]he tender offer price of $35.00 per share drastically undervalued the Company's future prospect."

39. The Underlying Complaints allege that "3M paid Ceradyne's stockholders an unfair and undervalued price to acquire a high value-added supplier of unique technology in an above-average growth market."

40. The Underlying Complaints allege that each of the Individual Defendants "approved the Transaction at a knowingly unfair price and locked up the

sale by agreeing to deal protection provisions within the Merger Agreement that were intended to deter any competing bids."

Ceradyne and the Individual Defendants Settle the Underlying Litigation

41. On information and belief, following a January 2017 mediation, the parties to the Underlying Litigation reached a settlement of the Underlying Litigation (the "Settlement") for an amount in excess of the limit of liability of the RLI Policy and Liberty Policy (the "Settlement Amount").

42. On information and belief, Ceradyne or 3M has paid the Settlement Amount.

43. Final approval for the Settlement was granted on or around December 10, 2018.

**THE "LOSS EXCEPTION" PRECLUDES COVERAGE FOR THE SETTLEMENT**

44. As set forth above, the Loss Exception states:

> In the event of a Claim alleging that the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all the ownership interest in or assets of an entity is inadequate, Loss with respect to such Claim shall not include any amount of any judgment or settlement representing the amount by which such price or consideration is effectively increased; provided, however, that this paragraph shall not apply to Defense Costs or to any Non-Indemnifiable Loss in connection therewith.
> [Primary Policy, Section 13.]

45. Because the Underlying Litigation "alleg[es] that the price or consideration paid or proposed to be paid for the acquisition [of Ceradyne]…is inadequate", the Loss Exception provides there is no coverage for "any…settlement representing the amount by which such price or consideration is effectively increased." Here, that means the entire Settlement is not "Loss."

46. First, the plaintiffs in the Underlying Litigation alleged that they were harmed because the $35 per share price attained in the Merger was not adequate or sufficient. In other words, the Underlying Litigation alleged that the price or consideration paid for the acquisition of Ceradyne was inadequate.

KLINEDINST PC
777 S. FIGUEROA ST., SUITE 2800
LOS ANGELES, CALIFORNIA 90017

47. Second, the Settlement Amount, paid to compensate Ceradyne shareholders who received $35 per share in the Merger, represents an amount by which the Merger price or consideration was effectively increased.

48. Third, the Settlement does not constitute "Non-Indemnifiable Loss."

49. "Non-Indemnifiable Loss" is defined in the Primary Policy as "Loss for which an Organization has neither indemnified nor is permitted or required to indemnify an Insured Person pursuant to law or contract or the charter, bylaws, operating agreement or similar documents of an Organization." [Primary Policy, Section 13.] Section 12.A.1 of the Primary Policy provides, among other things, that: "The Organizations agree to indemnify the Insured Persons and/or advance Defense Costs to the fullest extent permitted by law. . . ."

50. No provision of law prohibits Ceradyne from indemnifying the Individual Defendants for the amount of the Settlement, and Ceradyne or 3M paid the Settlement; therefore, the Settlement does not constitute Non-Indemnifiable Loss.

## CAUSE OF ACTION

*(Declaratory Relief: The Settlement Does Not Constitute Loss Due to the Loss Exception)*

51. The Plaintiffs repeat and incorporates by reference the allegations in Paragraphs 1 through 50 of this Complaint.

52. The Excess Policies, except for premium, limit of liability and as otherwise specifically set forth therein, apply in conformance with the provisions of the Primary Policy.

53. As discussed above, the Primary Policy affords coverage, subject to its other terms, conditions, limitations, and exclusions, only for specified "Loss." [Ex. A, Primary Policy, Section 1.]

54. The "Loss Exception" in the Primary Policy's definition of "Loss" states that:

COMPLAINT FOR DECLARATORY RELIEF

> In the event of a Claim alleging that the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all the ownership interest in or assets of an entity is inadequate, Loss with respect to such Claim shall not include any amount of any judgment or settlement representing the amount by which such price or consideration is effectively increased; provided, however, that this paragraph shall not apply to Defense Costs or to any Non-Indemnifiable Loss in connection therewith.

[*Id.,* Section 13.]

55. The Settlement falls within the scope of the Loss Exception. Specifically, the Underlying Litigation alleged that the price or consideration paid for Ceradyne was inadequate; the Settlement represents an amount by which the price or consideration for the Merger was effectively increased; and the Settlement does not constitute Non-Indemnifiable Loss.

56. In sum, the Settlement does not constitute Loss, as that term is defined in the Primary Policy, and the Excess Policies, which incorporate the same definition of Loss, do not afford any coverage for the Settlement.

57. An actual controversy has arisen between the Plaintiffs and Ceradyne concerning whether either of the Excess Policies affords coverage for the portion of the Settlement that Ceradyne contends falls within the coverage layers of the Excess Policies.

58. The Plaintiffs are entitled to a judgment declaring that the Excess Policies do not provide coverage for the Settlement of the Underlying Litigation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs RLI Insurance Company and Liberty Mutual Insurance Company request that the Court enter judgment in their favor as follows:

1. A judgment declaring that the Excess Policies do not provide coverage for the Settlement in the Underlying Litigation; and

/ / /

/ / /

KLINEDINST PC
777 S. FIGUEROA ST., SUITE 2800
LOS ANGELES, CALIFORNIA 90017

2. For Plaintiffs' costs of suit herein and for such other relief as this Court deems just and proper.

DATED: October 16, 2020

KLINEDINST PC

By:     / s / Paul H. Burleigh
    Paul H. Burleigh
    Attorneys for Plaintiff Liberty Mutual Insurance Company

DATED: October 16, 2020

MORRISON & PROUGH LLP

By:     / s / Michael D. Prough
    Michael D. Prough
    Attorneys for Plaintiff RLI Insurance Company

18842384.1