IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RLI INSURANCE CO. and LIBERTY MUTUAL INSURANCE CO., ) ) ) Plaintiffs, ) ) v. ) ) CERADYNE, INC., ) ) Defendant. ) | C.A. No. 20-1777 (MN) |

## MEMORANDUM OPINION

Robert J. Katzenstein, SMITH, KATZENSTEIN & JENKINS LLP, Wilmington, DE; John E. Howell, WILEY REIN LLP, Washington, DC – *Attorneys for Plaintiff RLI Insurance Co.*

Robert J. Katzenstein, SMITH, KATZENSTEIN & JENKINS LLP, Wilmington, DE; Ronald P. Schiller and Bonnie M. Hoffman, HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER, Philadelphia, PA – *Attorneys for Plaintiff Liberty Mutual Insurance Co.*

Adam V. Orlacchio and Brandon W. McCune, BLANK ROME LLP, Wilmington, DE; James R. Murray and Kyle P. Brinkman, BLANK ROME LLP, Washington, DC; Jared Zola, BLANK ROME LLP, New York, NY – *Attorneys for Defendant Ceradyne, Inc.*

October 19, 2021
Wilmington, Delaware

*Maryellen Noreika*
**NOREIKA, U.S. DISTRICT JUDGE**

Plaintiffs RLI Insurance Co. and Liberty Mutual Insurance Co. ("the Excess Insurers") sued Defendant Ceradyne, Inc. ("Ceradyne") in the United States District Court for the Central District of California seeking a declaratory judgment that Ceradyne's settlement of shareholder litigation in California did not constitute a loss covered by the "Excess Policies," as defined below ("the California Coverage Action"). In response, Ceradyne separately filed a motion to transfer and a motion to dismiss, arguing that both motions should be granted because the California Coverage Action was prematurely filed in violation of a contractual waiting period. (D.I. 19; D.I. 31). The California District Court granted the motion to transfer leaving this Court to decide the motion to dismiss. For the reasons set forth below, the motion to dismiss is DENIED.

I.  **BACKGROUND**

A.  **The Insurance Policies**

Non-party National Union Fire Insurance of Pittsburgh, Pa issued Ceradyne an Executive Edge Broad Form Management Liability Insurance Policy ("the Primary Policy") for the policy period July 31, 2012 to July 31, 2013. (D.I. 24 ¶ 11). The Primary Policy contains a waiting period for when the parties may commence litigation after a failed mediation. (D.I. 26-1, Endorsement #29 (ECF 69)).

Plaintiff RLI issued Ceradyne an excess liability policy ("the RLI Policy") for the same July 31, 2012 to July 31, 2013 policy period as the Primary Policy. (D.I. 24 ¶ 12). As an excess policy, the RLI Policy provides insurance coverage "in accordance with the limitations, conditions, provisions and other terms of the Primary Policy." (D.I. 26-2, Excess Liability Policy § 1).

Plaintiff Liberty issued Ceradyne an excess liability policy ("the Liberty Policy," and together with the RLI Policy, "the Excess Policies") for the same July 31, 2012 to July 31, 2013 policy period as the Primary Policy. (D.I. 24 ¶ 13). As an excess policy, it likewise "incorporates

by reference the insuring clauses, warranties, definitions, terms, conditions, exclusions and other provisions contained in the Primary Policy." (D.I. 26-3, Policy Terms § 1 (ECF 5)).

### B. The Standstill Agreement

In October 2012, Ceradyne announced that it would merge with 3M Company. (D.I. 24 ¶ 24). Following the announcement, Ceradyne shareholders filed lawsuits against Ceradyne and its directors in the California Superior Court for Orange County. (*Id.* ¶¶ 1, 27). Those actions were consolidated into the action captioned *In re Ceradyne, Inc. Shareholder Litigation*, Lead Case No. 30-2012-00604001-CU-BT-CXC ("the Underlying Litigation"). (*Id.*).

Ceradyne settled the Underlying Litigation and requested coverage for the settlement from RLI and Liberty. (*Id.* ¶ 1). RLI and Liberty have denied coverage on the grounds that the settlement is not a "Loss" within the meaning of the Excess Policies. (*Id.* ¶ 3).

Between August 2017 and August 2020, Ceradyne and the Excess Insurers engaged in two mediation sessions over the coverage dispute but were unable to resolve their differences. (D.I. 24 ¶¶ 52-54, 60). In between the two mediation sessions, around September 6, 2019, Ceradyne and the Excess Insurers executed a Standstill and Tolling Agreement ("the Standstill Agreement"). (*Id.* ¶ 56-58). Like the Primary Policy, the Standstill Agreement contains a waiting period on when the parties may commence litigation after a failed mediation. (D.I. 31-12 § 3).

### C. The Filing of the California Action

At approximately 1:12 p.m. Pacific Time on October 16, 2020, the Excess Insurers filed a lawsuit against Ceradyne in the United States District Court for the Central District of California, captioned *RLI Insurance Company v. Ceradyne, Inc. et al.*, No. 8:20-cv-01997 ("the California Coverage Action"). On December 29, 2020, the California Court transferred the California Coverage Action to this Court, which became the instant action. (D.I. 34).

## II. LEGAL STANDARD

Under Rule 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive the motion to dismiss, the complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Twombly*, 550 U.S. at 555. In assessing the plausibility of a claim, the court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *In re Rockefeller Ctr. Prop., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002). The court's review is limited to the allegations in the complaint, exhibits attached to the complaint, documents incorporated by reference, and items subject to judicial notice. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## III. DISCUSSION

Ceradyne asks the Court to dismiss this action because it was prematurely filed. (D.I. 31-1). Specifically, Ceradyne argues that dismissal is an appropriate remedy for breach of the waiting period in the Primary Policy (*id*. at 13), or in the alternative, that the prematurely filed complaint is an "anticipatory action" and dismissal is the appropriate remedy for the Excess Insurers' forum shopping. (*Id*. at 17). The Court rejects both arguments because the Excess Insurers' complaint was not prematurely filed.

### A. The Waiting Period in the Primary Policy

Ceradyne contends that Delaware law governs the Excess Policies (D.I. 31-1 at 8 n.3), and the Excess Insurers did not dispute this contention. (*See* D.I. 39). Accordingly, the Court will apply Delaware law. The waiting period in the Primary Policy states:

3

> In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and *at least 60 days shall have elapsed* from the date of the termination of the mediation.

(D.I. 24 ¶ 51) (emphasis added). The Primary Policy does not specify when the sixtieth day is considered to "have elapsed." When a contract is silent on a method of calculating time, Delaware courts defer to common law principles of contract interpretation.

"Insurance policies are contracts, and Delaware courts apply the ordinary principles of contract interpretation to construe insurance policies." *Monzo v. Nationwide Prop. & Cas. Ins. Co.*, 249 A.3d 106, 118 (Del. 2021). Thus, "where the language of a policy is clear and unequivocal, the parties are to be bound by its plain meaning." *Id*. (quoting *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 288 (Del. 2001)). "Under well-settled case law, Delaware courts look to dictionaries for assistance in determining the plain meaning of terms which are not defined in a contract." *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 738 (Del. 2006).

Oxford English Dictionary defines "elapse" to mean "Of time, a period of time: To slip by, pass away, expire."[1] Accordingly, a day does not "elapse" until the day has expired, or concluded. More specifically, "the phrase 'at least sixty (60) days shall have elapsed' in the . . . Primary Policy means that the parties may only file a case on the sixty-first day." *Verizon Commc'ns Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. N18C-08-086 EMD CCLD, 2019 WL 2517418, at *3 (Del. Super. Ct. Apr. 26, 2019)).

Ceradyne contends that the waiting period in the Primary Policy means that none of the of parties were allowed to commence a judicial proceeding as to this dispute before 12:00 a.m. on the

---

[1] Oxford English Dictionary, https://www.oed.com/view/Entry/60112?rskey=diOPrx&result=2#eid (last visited October 15, 2021).

4

morning of October 17, 2020. (D.I. 31-1 at 9). Therefore, under the Primary Policy, the Excess Insurers' complaint filed on October 16, 2020 was premature.

### B.     The Waiting Period in the Standstill Agreement

The Standstill Agreement provides that "During the Standstill Period, no party shall initiate a lawsuit." (D.I. 31-12 § 3). The "Standstill Period" is defined as "the time period commencing on and including the Effective Date, and continuing through and including the Termination Date (if any)." (*Id*. at § 1(c)). "Termination Date" means, "the date occurring sixty (60) days at 12:00 p.m. Central Time after any Party sends a written notice of intent to terminate this Agreement ('Termination Notice') to the other Party pursuant to Paragraph 4 . . . ." (*Id*. at § 1(b)).

On August 17, 2020, Ceradyne sent a Termination Notice to the Excess Insurers pursuant to Paragraph 4 of the Standstill Agreement. (D.I. 24 ¶ 62; D.I. 31-12). Thus, as Ceradyne itself has alleged elsewhere, "the 'Termination Date' pursuant to the Standstill Agreement is 12:00 pm Central Time on October 16, 2020." (*See Ceradyne, Inc. v. RLI Insurance Co*., C.A. No. 20-1398 (D. Del. Oct. 16, 2020), D.I. 1 ¶ 68).[2] There is no need to determine under Delaware common law when the sixtieth day has elapsed, because the contract was not silent on this issue. Therefore, under the Standstill Agreement, none of the of parties was allowed to commence a judicial proceeding as to this dispute before 12:00 p.m. Central Time on October 16, 2020.

### C.     Resolving the Conflict Between the Two Waiting Periods

As previously stated, the waiting period in the Primary Policy means that the Excess Insurers could not file their complaint before 12:00 a.m. on the morning of October 17, 2020, and the waiting period in the Standstill Agreement means that the Excess Insurers could not file their

---

[2]     "To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings." *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd*., 181 F.3d 410, 426 (3d Cir. 1999).

5

complaint before 12:00 p.m. Central Time on October 16, 2020.  Thus, the waiting periods in the Primary Policy and the Standstill Agreement cover the same subject matter but are in conflict.  In addition, the Excess Insurers filed their complaint on October 16, 2020 at approximately 1:12 p.m. Pacific Time, which is 3:12 p.m. Central Time.  Accordingly, the Excess Insurers' complaint is premature if the waiting period in Primary Policy governs but not premature if the waiting period in Standstill Agreement governs.  Indeed, Ceradyne does not dispute that the Excess Insurers complaint was timely filed under the waiting period in the Standstill Agreement.  (D.I. 31-1 at 11).  To resolve this dispute, the Court must determine which waiting period takes primacy.

"Delaware recognizes that where a new, later contract between the parties covers the same subject matter as an earlier contract, the new contract supersedes and controls that issue, if the two agreements conflict."  *Cabela's LLC v. Wellman*, C.A. No. 2018-0607-TMR, 2018 WL 5309954, at *4 (Del. Ch., Oct. 26, 2018); *see also Country Life Homes, Inc. v. Shaffer*, No. Civ.A. 2288-S, 2007 WL 333075, at *5 (Del. Ch. Jan. 31, 2007) ("The new contract, as a general matter, will control over the old contract with respect to the same subject matter to the extent that the new contract is inconsistent with the old contract . . . ."); *Bioveris Corp. v. Meso Scale Diagnostics, LLC*, C.A. No. 8692–VCMR, 2017 WL 5035530, at *7 n.71 (Del. Ch. Nov. 2, 2017) ("Because there is no way for a party to comply with both dispute resolution provisions the later in time provision . . . supersedes the earlier provision").

Consistent with Delaware law, the Court concludes that the waiting period in the Standstill Agreement supersedes the waiting period in the Primary Policy.  Because the Excess Insurers' complaint was not prematurely filed under the governing Standstill Agreement, Ceradyne's motion to dismiss is denied.

## IV.     CONCLUSION

For the foregoing reasons, Ceradyne's Motion to Dismiss the Excess Insurers' Amended Complaint is (D.I. 31) DENIED.  An appropriate order will be entered.